**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>85 FLATBUSH RHO MEZZ LLC, et al.,<br><br>                           Debtors. | Return Date:   August 10, 2022, 2:00 p.m.<br><br>Responsive Papers:  Aug. 3, 2022<br><br>Chapter 11<br>Case No.: 20-23280-RDD |
| 85 FLATBUSH MEZZ LLC,<br><br>                        Plaintiff,<br><br>  - against -<br><br>TH HOLDCO LLC as assignee of 85 Flatbush Avenue 1 LLC, in its capacity as the Debtor's Prepetition mortgage lender to 85 Flatbush RHO Hotel and 85 Flatbush RHO Residential,<br><br>                        Defendant. | Adversary Proceeding<br>Case No. 7:22-ap-07022-RDD |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TH HOLDCO LLC'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**
**PURSUANT TO FED. R. CIV. P. 12(b)(1), (c), & (h)(3)**

# TABLE OF CONTENTS

<u>Page</u>

**PRELIMINARY STATEMENT** ............................................................................1

**FACTS** ................................................................................................................3

    A.    Prior Senior Lender and Mezzanine Lender Enter into the ICA. ................3

    B.    Senior Borrowers Default on the Senior Loan and File for Bankruptcy Protection. ............................................................................5

    C.    TH Holdco Acquires the Senior Loan and Seeks Confirmation of its Plan. ..................................................................................................6

    D.    Mezzanine Lender Belatedly Commences this Adversary Proceeding to Interfere with Confirmation of TH Holdco's Plan. ..............7

**ARGUMENT** ....................................................................................................10

    I.    THE COURT DOES NOT HAVE JURISDICTION OVER THE ADVERSARY PROCEEDING....................................................................10

        A.    The ICA Expressly Prohibited Mezzanine Lender from Commencing the Adversary Proceeding. .................................................11

        B.    The Bankruptcy Court Does Not Have "Related To" Jurisdiction to Hear the Adversary Proceeding................................................................14

            1.    Any Potential Effect the Adversary Proceeding Might Have on the Bankruptcy Proceedings is Too Remote and Speculative to Confer Jurisdiction. .............................................15

            2.    In the Event the Plan is Confirmed, This Court Will Also Lack "Related To" Jurisdiction Because the Adversary Proceeding Does Not Have a Close Nexus to the Plan. ................18

    II.    IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS DISCRETION TO ABSTAIN FROM HEARING THE ADVERSARY PROCEEDING ...................................................................................19

**CONCLUSION** ................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akanthos Cap. Mgmt., LLC v. CompuCredit Holdings Corp.*,
  677 F.3d 1286 (11th Cir. 2012)............................................................................13

*Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*,
  No. 11 Civ. 2232, 2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011) ...................................16, 17

*Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) ....................................................................................15 n.6

*In re Am. Rds. LLC*,
  496 B.R. 727 (Bankr. S.D.N.Y. 2013) ...........................................................10, 13

*In re Baypoint Assocs.*,
  No. 05-1356, 2008 WL 822122, at *3 (E.D.N.Y. Mar. 19, 2008).........................................21

*Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*,
  372 F.3d 154 (3d Cir. 2004) ....................................................................................19

*Brown v. Netflix, Inc.*,
  855 F. Appx. 61 (2d Cir. 2021)....................................................................................10

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995) ..............................................................................................15

*Cody, Inc. v. Orange Cty. (In re Cody, Inc.)*,
  281 B.R. 182 (S.D.N.Y. 2002)...............................................................................19, 20

*Dunaway v. Purdue Pharms. L.P. (In re Purdue Pharms. L.P.)*,
  619 B.R. 38 (S.D.N.Y. 2020)....................................................................................14

*GE Cap. Corp. v. Pro-Fac Coop., Inc.*,
  No. 01 CIV. 10215, 2002 WL 1300054 (S.D.N.Y. June 11, 2002)................................16, 17

*In re George Wash. Bridge Bus Station Dev. Venture LLC*,
  No. 19-13196, 2022 WL 1714176 (Bankr. S.D.N.Y. May 25, 2022).............................20, 22

*In re Innkeepers USA Tr.*,
  448 B.R. 131 (Bankr. S.D.N.Y. 2011) ...........................................................11, 13

*Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund, Ltd. (In re
    Ion Media Networks, Inc.)*,
    419 B.R. 585 (Bankr. S.D.N.Y. 2009) ...................................................... 11, 12, 13

*Kraken Inv. Ltd. v. Jacobs (In re Salander-O'Reilly Galleries, LLC)*,
    475 B.R. 9 (S.D.N.Y. 2012) ................................................................................ 14

*Lynch v. City of N.Y.*,
    952 F.3d 67 (2d Cir. 2020) .................................................................................. 10

*Marine Midland Bank v. Zurich Ins. Co. (In re Olympia & York Maiden Lane
    Co.)*, No. 98 B 46167, 1999 WL 58581 (Bankr. S.D.N.Y. Jan. 25, 1999) ........................... 14

*Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear
    Corp.)*,
    241 B.R. 511 (Bankr. S.D.N.Y. 1999) ................................................................... 23

*McMillan v. Barclays Bank PLC*,
    No. 13-cv-01095, 2014 WL 4364053 (S.D.N.Y. Sept. 3, 2014) .............................. 10, 15, 17

*Midtown West Portfolio Lender LLC v. CMTG Lender 23 LLC*,
    Index No. 656589/2021 (Sup. Ct. N.Y. Cty. Nov. 19, 2021) ........................................... 8 n.4

*Mizuho Corp. Bank, Ltd. v. Enron Corp. (In re Enron Corp.)*,
    302 B.R. 463 (Bankr. S.D.N.Y. 2003) .......................................................... 11, 13

*Moodie v. Fed. Rsrv. Bank of N.Y.*,
    58 F.3d 879 (2d Cir. 1995) .................................................................................. 10

*In re Motors Liquidation Co.*,
    457 B.R. 276 (Bankr. S.D.N.Y. 2011) ................................................................... 20

*New England Nat'l, LLC v. Town of East Lyme (In re New England Nat'l, LLC)*,
    No. 02-33699, 2013 WL 812380 (Bankr. D. Conn. Mar. 5, 2013) ........................................ 10

*Osuji v. HSBC Bank, U.S.A., N.A.*,
    580 B.R. 605 (E.D.N.Y. 2018) ........................................................................... 22

*Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*,
    639 F.3d 572 (2d Cir. 2011) .............................................................................. 15

*Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.)*,
    335 B.R. 66 (Bankr. S.D.N.Y. 2005) ................................................................... 18

*Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*,
    No. 94 B 44488, 1999 WL 294995, at *3 (S.D.N.Y. May 11, 2019) ................................... 21

*Sealink Funding Ltd. v. Bear Stearns & Co.*,
No. 12 Civ. 1397, 2012 WL 4794450 (S.D.N.Y. Oct. 9, 2012) ....................................16, 17

*Sokola v. Weinstein*,
No. 20-cv-0925, 2020 WL 3605578 (S.D.N.Y. July 2, 2020)................................. 14, 16, 17

*SPV OSUS Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018) ...........................................................................................16

*Taub v. Hershkowitz (In re Taub)*,
417 B.R. 186 (Bankr. E.D.N.Y. 2009) ...............................................................................21

*Tilton v. MBIA Inc.*,
620 B.R. 707 (S.D.N.Y. 2020)............................................................................... 14, 15, 21

*Vanguard Prods. Corp. v. Citrin (In re Indicon, Inc.)*,
645 F. Appx. 39 (2d Cir. 2016).......................................................................................18

*Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP (In re Tronox)*,
603 B.R. 712 (Bankr. S.D.N.Y. 2019) ................................................................................20

*Worldview Ent. Holdings Inc. v. Woodrow*,
611 B.R. 10 (S.D.N.Y. 2019)...........................................................................................21

*ZBD Construs., Inc. v. Billings Generation, Inc.*,
No. 09 Civ. 6667, 2011 WL 1327144 (S.D.N.Y. Mar. 25, 2011).........................................13

**Statutes**

11 U.S.C. § 157...............................................................................................................14

28 U.S.C. § 1334(b) .....................................................................................................2, 14

28 U.S.C. § 1334(c)(1) ............................................................................................ 3, 19, 20

**Rules**

Fed. R. Civ. P. 12(c)........................................................................................................10

Fed. R. Civ. P. 12(h)(3)....................................................................................................10

iv

Pursuant to Federal Rule of Civil Procedure 12(b)(1), (c), and (h)(3), made applicable here by Federal Rule of Bankruptcy Procedure 7012, defendant TH Holdco LLC ("TH Holdco") respectfully makes this motion for judgment on the pleadings (the "Motion") dismissing the above-captioned adversary proceeding (the "Adversary Proceeding") brought by plaintiff 85 Flatbush Mezz LLC ("Mezzanine Lender") based on the Court's lack of subject matter jurisdiction, or in the alternative, abstaining pursuant to 28 U.S.C. § 1334(c)(1).[1] TH Holdco respectfully submits this memorandum of law, together with the accompanying declaration of Emilie B. Cooper, dated June 27, 2022, and the exhibits thereto ("Cooper Ex. __"), in support of the Motion.

## PRELIMINARY STATEMENT

This Adversary Proceeding is a transparent attempt by Mezzanine Lender to extract hold-up value from its otherwise out of the money position.  Relying on the intercreditor agreement between Mezzanine Lender and TH Holdco (the "ICA"), two non-debtors, Mezzanine Lender has conjured up meritless claims and, based on those claims, sought to impede and delay confirmation of a liquidation plan proposed by TH Holdco (the "Plan").  Mezzanine Lender's actions violate the plain terms of the ICA, which specifically prohibit Mezzanine Lender from engaging in this type of obstructionist conduct.  Moreover, under settled jurisdictional principles, Mezzanine Lender's claims — which do not involve the debtors and have no nexus to the Plan — should not be entertained by this Court.  Accordingly, and for the reasons more specifically set forth below, the Adversary Proceeding should be dismissed.

There can be no real dispute that Mezzanine Lender filed this proceeding in contravention of the no-action clause in the ICA, pursuant to which Mezzanine Lender waived certain of its

---

[1]     Unless otherwise stated, all internal citations and quotations are omitted, and all alterations, ellipses, and emphasis are added.  Capitalized terms not defined herein shall have the meanings ascribed to them in the Answer (Cooper Ex. 4 (Dkt. No. 6)), or the ICA (Cooper Ex. 1).

bankruptcy rights.  The ICA explicitly forbids Mezzanine Lender from commencing any action in

a bankruptcy proceeding by the debtors ("Debtors") in the above-captioned Chapter 11 cases (the

"Bankruptcy Proceedings"), or from taking any other action that is adverse to TH Holdco's

enforcement of its claim.  Cooper Ex. 1 (ICA) § 9(d)(i).  This unequivocal prohibition bars the

commencement and prosecution of the Adversary Proceeding, and deprives Mezzanine Lender of

standing to assert its claims in this Court.  Indeed, as Judge Drain correctly remarked, "I have a

hard time seeing [jurisdiction] here," "given the restrictions . . . in the inter-creditor agreement that

are imposed on the Mezzanine Lenders."  Cooper Ex. 2 (May 16 Hearing Tr.) at 39:14-16.  On

this basis alone, the Adversary Proceeding should be dismissed.

Additionally, the Adversary Proceeding does not fall within the scope of the Court's

bankruptcy jurisdiction, which is circumscribed by statute.  Mezzanine Lender cannot credibly

contend that the Adversary Proceeding comes within this Court's core jurisdiction and, therefore,

jurisdiction would only exist if Mezzanine Lender can demonstrate, by a preponderance of the

evidence, that the Adversary Proceeding is "related to" the Bankruptcy Proceedings.  Put simply,

it cannot.  The chain of causation between any ultimate (highly unlikely) finding in favor of

Mezzanine Lender and any effect on the Bankruptcy Proceedings is far too attenuated.  There is

an entire series of events before a decision in this proceeding could conceivably have any effect

on the Plan.  While all of those future events may be theoretically possible, none of them (let alone

all of them) is guaranteed (or even likely) to transpire should Mezzanine Lender somehow prevail

in the Adversary Proceeding.  The Adversary Proceeding, therefore, is not sufficiently related to

the Bankruptcy Proceedings to invoke the Court's jurisdiction under Section 1334(b).

Finally, even if the Court concludes that it has jurisdiction over the Adversary Proceeding,

the Court should exercise its broad discretion to abstain from hearing this dispute pursuant to

Section 1334(c)(1).  Indeed, several factors that courts consider in determining whether to abstain under Section 1334(c)(1) point decidedly in favor of abstention here.  Among other things, state law issues predominate over bankruptcy issues given that the case solely involves state law claims regarding the rights and obligations of the parties to the ICA.  Similarly, the Adversary Proceeding will have no impact on the efficiency of the administration of the bankruptcy estate because the case involves two non-debtors and an agreement to which no debtor is a party.  There also is a high degree of remoteness between the Adversary Proceeding and the Bankruptcy Proceedings, as confirmed by Judge Drain's determination that resolution of the Adversary Proceeding was not a "gating item" for confirmation and that "it should proceed on its own as a lawsuit that raises these issues would normally proceed."  Cooper Ex. 2 (May 16 Hearing Tr.) at 37:18-22.

In sum, there is no reason why this Court, rather than a state court, should burden its docket by hearing this state law contract dispute between two non-debtors.  Because Mezzanine Lender lacks standing, and this Court lacks subject matter jurisdiction, the Adversary Proceeding should be dismissed.

## **FACTS**

### A.    **Prior Senior Lender and Mezzanine Lender Enter into the ICA.**

1.    On or about September 19, 2019, 85 Flatbush Avenue 1 LLC ("Prior Senior Lender") and Mezzanine Lender entered into the ICA in connection with (i) a senior loan in the principal amount of $70,000,000 (the "Senior Loan") made to Debtors 85 Flatbush RHO Residential LLC and 85 Flatbush RHO Hotel LLC ("Senior Borrowers"); and (ii) a mezzanine loan in the principal amount of $6,000,000 (the "Mezzanine Loan") that was made to Debtor 85 Flatbush RHO Mezz LLC ("Mezzanine Borrower"; with Senior Borrowers, "Borrowers"; and each, a "Borrower").  Cooper Ex. 3 (Complaint) ¶¶ 16-17, 54-56.  The ICA governs the relationship

3

between the two lenders and sets forth their respective rights and obligations with respect to one another. *See* Cooper Ex. 4 (Answer) ¶ 57; Cooper Ex. 1 (ICA, Recital H), at 2; Cooper Ex. 3 (Complaint) ¶ 21. As Mezzanine Lender acknowledges, the ICA, among other things, reaffirms the superiority of the Senior Loan and subordination of the Mezzanine Loan. *See* Cooper Ex. 3 (Complaint) ¶ 9 ("[T]he ICA is weighted heavily in favor of the Senior Lenders as the holder of the mortgage loan."); Cooper Ex. 1 (ICA) §§ 7 ("Subordination of Mezzanine Loan and Mezzanine Loan Documents"), 8 ("Payment Subordination"), 9 ("Rights of Subrogation; Bankruptcy"). Certain provisions in the ICA are of particular relevance to the Adversary Proceeding and this Motion.

2.      Section 9(d) of the ICA, commonly known as a "no-action" clause, contains express and specific waivers of certain of Mezzanine Lender's rights, including its rights to participate in any bankruptcy proceeding in which Mezzanine Lender is deemed to be a creditor of Borrowers (a "Borrower Bankruptcy"). Specifically, in any such Borrower Bankruptcy, absent Senior Lender's prior written consent, Mezzanine Lender shall not:

- "make any election, give any consent, **commence any action**, [or] credit bid on all or any portion of the collateral for the Senior Loan";

- "file any motion, claim, obligation, notice or application";

- "**challenge (or join in another party's challenge to) the validity or amount of any claim** submitted in such Proceeding by Senior Lender in good faith or any valuations of . . . any [ ] Senior Loan collateral submitted by Senior Lender in good faith";

- "**take any . . . action . . . which is adverse to Senior Lender's enforcement of its claim** or receipt of adequate protection"; or

- "take any other action . . . ."

Cooper Ex. 1 (ICA) § 9(d)(i), (iii).

4

3.      The ICA also sets forth several circumstances that constitute Mezzanine Lender Intercreditor Events of Default, including, without limitation, (i) "material breach[es] of any term, covenant, condition or agreement" in the ICA; and (ii) Mezzanine Lender "object[ing] to, oppos[ing], hinder[ing], contest[ing], interfer[ing] with or seek[ing] to enjoin or restrain . . . the exercise of rights or remedies by Senior Lender under the Senior Loan Documents while any Senior Event of Default . . . exists . . . ."  Cooper Ex. 1 (ICA) § 1(a) (definition of "Mezzanine Lender Intercreditor Event of Default," cls. (i) & (v)).  Upon the occurrence and during the continuance of a Mezzanine Lender Intercreditor Event of Default, Mezzanine Lender's rights under the ICA are restricted.  *See id.* §§ 4(a), 6(a) & (b), 8(a) & (b), 10(a), 11(a) & (d), 12(a) & (b)).

**B.      Senior Borrowers Default on the Senior Loan and File for Bankruptcy Protection.**

4.      Senior Borrowers own and operate a mixed-use property located in Brooklyn, New York, consisting of a hotel component commonly known as the Tillary Hotel (the "Hotel") and a residential component made up of 64 units (collectively, the "Property").  Cooper Ex. 4 (Answer) ¶ 55.  The Property secures the Senior Loan.  *Id.*  The COVID-19 pandemic had a direct, negative impact on both the Hotel and the residential component of the Property, and like many hotels in New York City, the Hotel temporarily closed from April 2020 through May 15, 2020 due to extremely low occupancy rates.  *Id.* ¶¶ 67, 69-70.

5.      Around this time, Senior Borrowers stopped paying their monthly debt service obligations to Prior Senior Lender and, on April 2, 2020, Prior Senior Lender sent a notice to Senior Borrowers advising them that certain Events of Default existed under the Senior Loan Documents.  *Id.* ¶ 85.  Mezzanine Lender was copied on the April 2, 2020 notice.  Cooper Ex. 4 (Answer) ¶ 85.  On July 16, 2020, Prior Senior Lender sent a separate notice to Mezzanine Lender

5

informing Mezzanine Lender of those Events of Default and providing Mezzanine Lender with five days to cure those Events of Default by remitting to Senior Lender the aggregate amount of $368,272.22.  Cooper Ex. 5 (July 16, 2020 Notice); Cooper Ex. 3 (Complaint) ¶¶ 29-32; Cooper Ex. 4 (Answer) ¶ 86.  But Mezzanine Lender did not avail itself of this right.  Cooper Ex. 4 (Answer) ¶ 87.

6.      On July 22, 2020, Prior Senior Lender sent a notice to Senior Borrowers informing them that, because the Events of Default had not been cured, Prior Senior Lender was accelerating Senior Borrowers' indebtedness.  Cooper Ex. 4 (Answer) ¶ 88.  Mezzanine Lender was also copied on that notice.  *Id.*  Senior Borrowers did not pay the indebtedness, and as a result, Prior Senior Lender commenced a mortgage foreclosure proceeding against Senior Borrowers on August 20, 2020 (the "Foreclosure Proceeding").  *Id.* ¶ 89.  At all times, Mezzanine Lender was aware of the Foreclosure Proceeding.  *Id.* ¶ 90.

7.      On December 15, 2020, Borrowers filed for bankruptcy in this Court.  Cooper Ex. 4 (Answer) ¶ 102.  Mezzanine Lender is a party to the Bankruptcy Proceedings, and an attorney for Mezzanine Lender appeared in the Bankruptcy Proceedings on December 22, 2020.  *See In re 85 Flatbush RHO Mezz LLC et al.*, Case No. 20-23280-rdd, Dkt. ("Bankr. Dkt.") No. 16.  Thus, as of no later than December 22, 2020, Mezzanine Lender was aware of the Bankruptcy Proceedings.  Cooper Ex. 4 (Answer) ¶ 103.

**C.      TH Holdco Acquires the Senior Loan and Seeks Confirmation of its Plan.**

8.      Pursuant to Section 4(c) of the ICA, Prior Senior Lender had the absolute right to sell the Senior Loan without prior notice to Mezzanine Lender.  Cooper Ex. 1 (ICA) § 4(c) ("Senior Lender may, from time to time, in its sole and absolute discretion and **without any prior notice to Mezzanine Lender**, Transfer all or any portion of the Senior Loan . . . .").  On January 28,

2022, Prior Senior Lender exercised that right and sold the Senior Loan to TH Holdco for value. Cooper Ex. 4 (Answer) ¶ 113; Cooper Ex. 3 (Complaint) ¶ 6. That same day, TH Holdco notified Mezzanine Lender that TH Holdco had purchased the Senior Loan. Cooper Ex. 4 (Answer) ¶ 115. On February 4, 2022, TH Holdco filed a Bankruptcy Rule 3001 Notice of Transfer of Claim, which disclosed the transfer of the Senior Loan to TH Holdco. *Id.* ¶ 116. On February 20, 2022, TH Holdco filed the Plan. Bankr. Dkt. No. 151.[2]

> **D.    Mezzanine Lender Belatedly Commences this Adversary Proceeding to Interfere with Confirmation of TH Holdco's Plan.**

9.    Objections to TH Holdco's Plan were due on March 24, 2022. The day before the deadline, March 23, 2022, Mezzanine Lender, commenced this Adversary Proceeding and asserted — for the very first time — certain purported rights under the ICA that it alleges accrued almost two years earlier, in **July of 2020**. Specifically, in its complaint in the Adversary Proceeding (the "Complaint") (Cooper Ex. 3), Mezzanine Lender asserts two state law causes of action relating to alleged breaches of the ICA. First, Mezzanine Lender seeks a declaratory judgment that Prior Senior Lender and TH Holdco breached the ICA by allegedly failing to issue notices to Mezzanine Lender informing Mezzanine Lender that it was entitled to exercise its right under the ICA to purchase the Senior Loan on July 16, 2020, August 20, 2020, and December 18, 2020, and that Mezzanine Lender is now entitled to purchase the loan for the price as it would have been calculated on July 16, 2020. Cooper Ex. 3 (Complaint), ¶¶ 10, 36-46. Second, Mezzanine Lender seeks an award of specific performance directing TH Holdco to sell and assign the Senior Loan to Mezzanine Lender at the July 16, 2020 price. *Id.* ¶¶ 47-52.

---

[2]    The Plan proposed by TH Holdco was subsequently amended and supplemented. *See* Bankr. Dkt. Nos. 175, 188, 201, 211, 223.

10.     The following day, March 24, 2022, Mezzanine Lender filed an objection to TH Holdco's motion to approve its disclosure statement based on the Adversary Proceeding (the "Mezz Objection").   Cooper Ex. 6.   Specifically, in the Mezz Objection, Mezzanine Lender asserted that the Plan was "patently unconfirmable" because, among other things, (i) it was "based on the false premise that [TH Holdco's] purchase and assignment of the Senior Loan is not subject to the Mezzanine Lender's purchase option rights"; and (ii) TH Holdco "has no legitimate interest to enforce in the case" because the "rights under the Senior Loan [ ] belong instead to the Mezzanine Lender."  *Id.* ¶¶ 4, 6.[3]

11.     The Adversary Proceeding (and the related Mezz Objection) are a transparent attempt by Mezzanine Lender to interfere with the confirmation of the Plan and extract hold-up value from Mezzanine Lender's otherwise out of-the-money position.   At no time prior to commencing this Adversary Proceeding did Mezzanine Lender contend, in sum or substance, that it was not provided the relevant notices in accordance with the ICA, that it was entitled to such a notice in accordance with the ICA, or that it wished to exercise the loan purchase option under the ICA.   Indeed, despite having had contemporaneous actual knowledge of all of the events that would have given rise to its right to purchase the Senior Loan, Mezzanine Lender waited until the very last moment, after the Plan was submitted and on the eve of the deadline for objections, to assert its rights.[4]

---

[3]     While Mezzanine Lender has sought to delay confirmation of TH Holdco's Plan based on the Adversary Proceeding, Mezzanine Lender does not meet the standards for an injunction and has not offered to post any bond to protect TH Holdco against the very substantial damages it would suffer from the delay advocated by Mezzanine Lender.

[4]     There can be no dispute that Mezzanine Lender had contemporaneous knowledge of each and every event that Mezzanine Lender contends to constitute a purchase option event pursuant to the ICA. Mezzanine Lender was copied on the July 22, 2020 notice to Borrower informing that Prior Senior Lender was electing to accelerate the Senior Loan.  Cooper Ex. 4 (Answer) ¶ 88.  Mezzanine Lender also knew that the Foreclosure Proceeding had occurred and was ongoing at all times.  *Id.* ¶ 90.  Finally, Mezzanine

12.     Since that time, Judge Drain has held two hearings relating to the Adversary Proceeding and the Bankruptcy Proceedings, one on April 6, 2022 and the other on May 16, 2022. At both of those hearings, Judge Drain intimated that this Court may lack jurisdiction to hear the Adversary Proceeding.  Judge Drain first expressed uncertainty regarding this Court's jurisdiction at the April 6 hearing, stating that "the merits of [Mezzanine Lender's] claim" is "an open issue, and it could be decided either here or in a state court, depending on this Court's jurisdiction." Cooper Ex. 7 (Apr. 6 Hearing Tr.) at 9:14-16.  Then, at the May 16 hearing, Judge Drain *sua sponte* raised the question of whether this Court has jurisdiction over the Adversary Proceeding.  Among other things, Judge Drain noted that the Adversary Proceeding is "between two non-debtors, to enforce an agreement that I don't think the Debtor is a party to," and stated that "I have a hard time seeing [jurisdiction] here," "given the restrictions . . . in the inter-creditor agreement that are imposed on the Mezzanine Lenders."  Cooper Ex. 2 (May 16 Hearing Tr.) at 39:6-8, 39:14-16. Judge Drain encouraged the parties "to look at that case law and see whether this is actually properly in State Court," and to consider "build[ing] in a period . . . to focus on that issue."  *Id.* at 39:17-20.  This Motion is being filed in response to the Court's invitation.

---

Lender appeared in the Bankruptcy Proceedings as early as December 22, 2020.  Bankr. Dkt. No. 16.  Yet, at no time before March 2022 did Mezzanine Lender ever express an interest in asserting its purported purchase option rights.  By contrast, in other scenarios, Mezzanine Lender diligently sought to enforce its purchase option rights at or about the time that the alleged purchase option events occurred.  Specifically, an affiliate of Mezzanine Lender (represented by the same litigation counsel) recently filed an action to compel the issuance of a purchase option notice in connection with another loan.  *See Midtown West Portfolio Lender LLC v. CMTG Lender 23 LLC*, Index No. 656589/2021 (Sup. Ct. N.Y. Cty. Nov. 19, 2021).

9

## ARGUMENT

### I.    THE COURT DOES NOT HAVE JURISDICTION OVER THE ADVERSARY PROCEEDING

13.    "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion to dismiss." *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020). Specifically, courts will "accept the pleadings' factual allegations as true and draw all reasonable inferences in Plaintiffs' favor." *Brown v. Netflix, Inc.*, 855 F. Appx. 61, 62 (2d Cir. 2021) (summary order).

14.    However, if on such a motion, the Court determines that it lacks subject matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action . . . .") (made applicable by Fed. R. Bankr. P. 7012(b)); *Moodie v. Fed. Rsrv. Bank of N.Y.*, 58 F.3d 879, 882 (2d Cir. 1995) ("[D]efects in subject matter jurisdiction cannot be waived and may be raised at any time during the proceedings."); *New England Nat'l, LLC v. Town of East Lyme (In re New England Nat'l, LLC)*, No. 02-33699, 2013 WL 812380, at *18 (Bankr. D. Conn. Mar. 5, 2013) ("Ordinarily, [a bankruptcy] court has a duty to confirm its subject matter jurisdiction before proceeding any further."). Moreover, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *McMillan v. Barclays Bank PLC*, No. 13-cv-01095, 2014 WL 4364053, at *2 (S.D.N.Y. Sept. 3, 2014).

15.    Here, Mezzanine Lender cannot carry its burden of establishing subject matter jurisdiction by a preponderance of the evidence. Indeed, subject matter jurisdiction does not exist for the reasons set forth below. Accordingly, the Adversary Proceeding should be dismissed pursuant to Federal Rule 12(b)(1), (c), and (h)(3).

10

A.    **The ICA Expressly Prohibited Mezzanine Lender from Commencing the
Adversary Proceeding.**

16.    As described above, in Section 9(d) of the ICA, Mezzanine Lender unambiguously

waived its right to take certain actions in any Borrower Bankruptcy.  *See supra* at 4.  Bankruptcy

courts have found such contractual waivers to be enforceable and "have upheld pre-petition inter-

creditor agreements waiving a creditor's bankruptcy rights where the creditors are sophisticated

parties fully aware of the implications of such a waiver."  *In re Am. Rds. LLC*, 496 B.R. 727, 732

(Bankr. S.D.N.Y. 2013) (collecting cases).  Specifically, "bankruptcy courts have routinely held

that a party lacks standing to take an action in bankruptcy in violation of a 'no action' clause" and,

accordingly, have constrained parties' actions on that basis.  *See id.*; *In re Innkeepers USA Tr.*, 448

B.R. 131, 144-45 (Bankr. S.D.N.Y. 2011); *Ion Media Networks, Inc. v. Cyrus Select Opportunities

Master Fund, Ltd. (In re Ion Media Networks, Inc.)*, 419 B.R. 585, 597-98 (Bankr. S.D.N.Y.

2009)); *Mizuho Corp. Bank, Ltd. v. Enron Corp. (In re Enron Corp.*), 302 B.R. 463, 477 (Bankr.

S.D.N.Y. 2003).

17.    Courts have recognized that the objective of no-action clauses in this context is "to

prevent or render moot the very sort of technical argument" that out-of-the-money junior creditors

tend to make to extract value from their otherwise valueless positions, and have therefore found

that "plainly worded contracts establishing priorities and limiting obstructionist, destabilizing and

wasteful behavior should be enforced and creditor expectations should be appropriately

fulfilled . . . ."  *In re Ion Media*, 419 B.R. at 594-95.

18.    For example, in *Ion Media*, the purchaser of discounted second lien debt of Ion

"vigorously" challenged the rights of the first lien lenders to recover as secured creditors certain

of Ion's FCC licenses, including by filing an objection to Ion's plan of reorganization and

commencing an adversary proceeding seeking a declaratory judgment regarding the existence of

11

any encumbrances on the FCC licenses, despite being party to an intercreditor agreement in which the junior lender "agreed to be silent" regarding issues of the priority of the first lien lenders' claims, including with respect to "purported collateral." 419 B.R. at 588-90, 594. Judge Peck found that the second lien lender lacked standing to file an objection to the plan and chastised its "high risk" litigation strategy, explaining that "a sophisticated and economically motivated and woefully out of the money creditor has deliberately chosen to ignore the terms of an unambiguous agreement that, read literally, precludes it from opposing confirmation." *Id.* at 590.

19.     The foregoing reasoning and precedent is directly applicable here. Section 9(d) of the ICA contains explicit language prohibiting Mezzanine Lender from taking certain actions in any Borrower Bankruptcy without Senior Lender's prior written consent, including but not limited to: (i) commencing any action; (ii) filing any motion, claim or application; (iii) taking any action adverse to Senior Lender's enforcement of its claim; or (iv) challenging the validity or amount of any claim by Senior Lender. Cooper Ex. 1 (ICA) § 9(d). There can be no dispute that by filing the Adversary Proceeding, which Mezzanine Lender obviously did without TH Holdco's consent, Mezzanine Lender took an action that is explicitly and specifically barred by the ICA.[5]

20.     Moreover, the language of Section 9(d) should be enforced as written. Mezzanine Lender is a sophisticated party and the language in Section 9(d) is even more explicit in what it prohibits Mezzanine Lender from doing than other no-action clauses that have been enforced. *See*

---

[5]     Mezzanine Lender also violated the ICA by filing the Mezz Objection, which, among other things, challenged the validity of a claim submitted in the Bankruptcy Proceedings. Mezzanine Lender continued its pattern of disregard for its contractual restrictions when on April 26, 2022, Mezzanine Lender filed another objection seeking to prevent any auction of the Property without first resolving the Adversary Proceeding. Bankr. Dkt. No. 199. Then, on June 22, 2022, Mezzanine Lender objected to confirmation of the Plan, purported to vote to reject the Plan (even though TH Holdco had already voted Mezzanine Lender's rights pursuant to Section 9(d)(ii) of the ICA), and threw its support behind a competing plan that was belatedly filed by the Debtors. *See* Bankr. Dkt. No. 227.

*In re Am. Rds.*, 496 B.R. at 730-31 (clause prohibited bondholders from filing objection to bankruptcy plan where it stated that "[b]ondholders cannot institute or direct proceedings with respect to the enforcement of the terms of the financing documents" and "are precluded from challenging or enforcing the lien" without consent); *In re Innkeepers USA Tr.*, 448 B.R. at 140 n.18, 144-45 (no-action clause that barred a certificate holder from "institut[ing] any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement or any Mortgage Loan" unless certain conditions precedent were satisfied, prevented a certificate holder from objecting to a bid procedures order in a bankruptcy case),

21.     Mezzanine Lender's "aggressive bankruptcy litigation tactics as a means to gain negotiating leverage or obtain judicial rulings" are precisely the type of "obstructionist" behavior that no-action clauses are intended to deter. *In re Ion Media*, 419 B.R. at 588-89. Accordingly, and in furtherance of the specifically negotiated provisions to which Mezzanine Lender agreed, this Court should dismiss the Adversary Proceeding based on Mezzanine Lender's lack of standing. *See In re Enron Corp.*, 302 B.R. at 477 (dismissing adversary proceeding brought by individual member of a lender group where "any action against the Defendants under the Interrelated Agreements must be taken by . . . Collateral Agent"); *ZBD Construs., Inc. v. Billings Generation, Inc.*, No. 09 Civ. 6667, 2011 WL 1327144, at *5-9, *11 (S.D.N.Y. Mar. 25, 2011) (dismissing action brought in contravention of intercreditor agreement provision that required prior consent of the "Required Senior Lenders," which consent had not been given); *Akanthos Cap. Mgmt., LLC v. CompuCredit Holdings Corp.*, 677 F.3d 1286, 1297-98 (11th Cir. 2012) ("enforcing "plain language of the no-action clause barring holders of securities from bringing any claims 'with respect to this Indenture or the Securities.'").

**B.**    **The Bankruptcy Court Does Not Have "Related To" Jurisdiction to Hear the Adversary Proceeding.**

22.    Federal bankruptcy courts have "jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); 11 U.S.C. § 157(b), (c).    Section 1334(b) sets forth three bases for bankruptcy jurisdiction: (i) "arising under" jurisdiction; (ii) "arising in" jurisdiction; and (iii) "related to" jurisdiction. *Sokola v. Weinstein*, No. 20-cv-0925, 2020 WL 3605578, at *7 (S.D.N.Y. July 2, 2020). "Arising under" and "arising in" jurisdiction are generally understood to comprise bankruptcy courts' "core jurisdiction" — those proceedings that involve substantive rights created by federal bankruptcy law or that would not exist outside of the bankruptcy. *See Tilton v. MBIA Inc.*, 620 B.R. 707, 719-20 (S.D.N.Y. 2020); *Marine Midland Bank v. Zurich Ins. Co. (In re Olympia & York Maiden Lane Co.)*, No. 98 B 46167, 1999 WL 58581, at *3 (Bankr. S.D.N.Y. Jan. 25, 1999). "Related to" jurisdiction generally is synonymous with "non-core" bankruptcy jurisdiction. *See Tilton*, 620 B.R. at 719. When a case is neither "core" nor "related to," a bankruptcy court lacks jurisdiction to hear it. *See In re Olympia & York Maiden Lane*, 1999 WL 58581, at *3.

23.    The Adversary Proceeding is not a core proceeding.  The Adversary Proceeding does not "aris[e] under title 11" because it does not assert rights created by the Bankruptcy Code. *Kraken Inv. Ltd. v. Jacobs (In re Salander-O'Reilly Galleries, LLC)*, 475 B.R. 9, 27 (S.D.N.Y. 2012).  Likewise, the Adversary Proceeding also does not "arise in" the Bankruptcy Proceedings as the Bankruptcy Proceedings did not give rise to Mezzanine Lender's claims, and such claims would exist irrespective of the Bankruptcy Proceedings. *Dunaway v. Purdue Pharms. L.P. (In re Purdue Pharms. L.P.)*, 619 B.R. 38, 55-56 (S.D.N.Y. 2020).  Therefore, the only arguable basis

14

for bankruptcy jurisdiction is "related to" jurisdiction.[6] But Mezzanine Lender cannot demonstrate

that the Adversary Proceeding comes within the Court's "related to" jurisdiction.

      1.       <u>Any Potential Effect the Adversary Proceeding Might Have on the</u>
<u>Bankruptcy Proceedings is Too Remote and Speculative to Confer</u>
<u>Jurisdiction.</u>

24.      As Mezzanine Lender apparently concedes, the mere fact that the Borrowers are in

bankruptcy does not itself bring a dispute between Senior Lender and Mezzanine Lender

concerning the ICA within this Court's jurisdiction. *See* Cooper Ex. 3 (Complaint) ¶ 11 (asserting

that this Court has jurisdiction "[e]*ven though* the Adversary Proceeding is between creditors of

the Debtor's estates"). Rather, under applicable law, the Court only has jurisdiction to hear this

dispute if there is "related to" jurisdiction; that is, if the instant dispute would have a conceivable

effect on the property of the debtors' estate or the allocation thereof. *See Parmalat Cap. Fin. Ltd.*

*v. Bank of Am. Corp.*, 639 F.3d 582, 579 (2d Cir. 2011). "Conceivable effects typically manifest

themselves by altering the amount of property available for distribution to the creditors of a

bankruptcy estate or the allocation among such creditors." *McMillan*, 2014 WL 4364053, at *3.

25.      But not ***any*** conceivable effect will not do. As the Supreme Court has

acknowledged, "a bankruptcy court's 'related to' jurisdiction cannot be limitless." *Celotex Corp.*

*v. Edwards*, 514 U.S. 300, 308 (1995). Instead, courts require that any contingent outcomes

---

[6]     In the Complaint, Mezzanine Lender contends that the Adversary Proceeding is a "core proceeding." Ex. 3 (Complaint) ¶¶ 11-12. But that allegation is entirely conclusory. Mezzanine Lender simply cites certain grounds enumerated in the Bankruptcy Code without offering any explanation of how they apply. The Court need not "accept as true" such bare "legal conclusion[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mezzanine Lender's sole substantive allegation in support of this Court's jurisdiction is that "the future course of [the Bankruptcy Proceedings] is directly impacted by the resolution of this action . . . ." Cooper Ex. 3 (Complaint) ¶ 11. However, as detailed herein, that is neither accurate nor sufficient. Moreover, this lone allegation does not support Mezzanine Lender's assertion that this matter is a "core proceeding." *See Tilton*, 620 B.R. at 720, 721 (breach of contract actions "do not fall within the non-exhaustive list of core proceedings in Section 157(b)(2)," and "common law contract [ ] claims [ ] do not emanate from Title 11").

actually be "possible." *See SPV OSUS Ltd. v. UBS AG*, 882 F.3d 333, 340-41 (2d Cir. 2018). An

effect "that is only ***theoretically*** possible" and is "otherwise remote or speculative" cannot support

"related to" jurisdiction. *See Sokola*, 2020 WL 3605578, at *11; *McMillan*, 2014 WL 4364053, at

*3; *GE Cap. Corp. v. Pro-Fac Coop., Inc.*, No. 01 CIV. 10215, 2002 WL 1300054, at *2 (S.D.N.Y.

June 11, 2002) ("[P]otential ramifications are insufficient to render the claims that have been

asserted against the non-debtor Defendants 'related to' Debtor's bankruptcy proceeding."). If an

effect is too "far removed," such that there are "too many links in the chain of causation before the

bankruptcy estate is affected[,]" that "may preclude 'related to' jurisdiction." *Allstate Ins. Co. v.

Credit Suisse Sec. (USA) LLC*, No. 11 Civ. 2232, 2011 WL 4965150, at *3, *5-6 (S.D.N.Y. Oct.

19, 2011); *Sealink Funding Ltd. v. Bear Stearns & Co.*, No. 12 Civ. 1397, 2012 WL 4794450, at

*2-3 (S.D.N.Y. Oct. 9, 2012). Here, any conceivable effect on the Bankruptcy Proceedings is

dependent on a series of contingencies — future events that are uncertain to occur — and,

therefore, no "related to" jurisdiction exists.

26.    Mezzanine Lender contends that if it were to prevail in the Adversary Proceeding,

Mezzanine Lender, rather than TH Holdco, would be the party with the right to propose a plan of

reorganization in the Bankruptcy Proceedings. Cooper Ex. 6 (Mezz Objection) ¶ 6. However,

Mezzanine Lender's contention skips over a series of necessary steps.

27.    Assuming that Mezzanine Lender were to succeed on the merits in the Adversary

Proceeding — which it will not because, among other things, (i) it was not ready, willing, and able

to purchase the Senior Loan in July 2020; (ii) it unreasonably delayed in asserting its claims to the

prejudice of TH Holdco; and (iii) there were and are several Mezzanine Lender Intercreditor

Events of Default  — Mezzanine Lender would not automatically be able to propose an alternate

plan. Rather, Mezzanine Lender would first need to provide sufficient funds to pay the Purchase

Deposit.  It would then need to obtain financing sufficient to fund the balance of the Loan Purchase

Price and close on the transaction.  Mezzanine Lender would next need to file a Rule 3001 notice

of transfer of claim, which would need to survive any objections.  Then if Mezzanine Lender

ultimately succeeded to the senior claimholder's position, it would need to actually propose a plan

that differs from the Plan and garner support for its proposed plan from the Debtors and other

creditors.  Finally, Mezzanine Lender would then need to prove up all of the elements of a

confirmed plan to have its alternate plan confirmed by this Court.  None of these steps (let alone

all of them) is a foregone conclusion.

       28.     As a result, the causal chain between a favorable resolution for Mezzanine Lender

in the Adversary Proceeding, on the one hand, and any effect on the bankruptcy estate, on the other

hand, is far too attenuated for Mezzanine Lender to show that the Adversary Proceeding is within

the Court's "related to" jurisdiction.  *See McMillan*, 2014 WL 4364053, at *3 (the court lacked

"related to" jurisdiction "[w]here the primary action is a 'mere precursor' to a potential claim

against the bankruptcy estate"); *see also Sealink Funding Ltd.*, 2012 WL 4794450, at *2-3  ("A

remote chance that a late-filed claim might be allowed . . . is too remote and speculative to support

the exercise of 'related to' jurisdiction of this non-core state law fraud action."); *Allstate Ins. Co.*,

2011 U.S. Dist. LEXIS 120734, at *8-9 ("[T]he dispute about the possibility of amending the

claims suggests that the underlying action is too far removed from the bankruptcy proceedings to

be related to them.").  Any "potential ramifications" on the Bankruptcy Proceedings resulting from

the Adversary Proceeding are merely "theoretically possible."  *Sokola*, 2020 WL 3605578, at *11;

*see also Allstate*, 2011 WL 4965150, at *6 ("[T]he very necessity of [ ] litigation . . . suggests that

the current action is too far removed to be jurisdictionally 'related to' the bankruptcies."); *GE Cap.*

*Corp.*, 2002 U.S. Dist. LEXIS 10419, at *7.  Accordingly, the Adversary Proceeding is not sufficiently "related to" the Bankruptcy Proceedings and must be dismissed for lack of jurisdiction.

> 2.    <u>In the Event the Plan is Confirmed, This Court Will Also Lack "Related To" Jurisdiction Because the Adversary Proceeding Does Not Have a Close Nexus to the Plan.</u>

29.    By the time the Court rules on this Motion, there is a possibility that the Plan will have been approved, as the Court is holding a confirmation hearing on that Plan this week, on June 30, 2022.  Bankr. Dkt. No. 210.  "[A]ll courts that have addressed the question have ruled that once confirmation occurs, the bankruptcy court's jurisdiction shrinks."  *Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 73-74 (Bankr. S.D.N.Y. 2005).  Courts in this Circuit have often applied the "close nexus" test, which is a more stringent test for a plaintiff to satisfy than the "conceivable effects" tests, to determine whether "related to" jurisdiction exists post-confirmation.  Because Mezzanine Lender cannot show that it can meet the "conceivable effects" test for the reasons described above, it follows that Mezzanine Lender will not be able to satisfy the more rigorous "close nexus" test for many of those same reasons.  *See Vanguard Prods. Corp. v. Citrin (In re Indicon, Inc.)*, 645 F. Appx. 39, 40 n.1 (2d Cir. 2016) (summary order) (declining to apply the close nexus test in light of its holding that the plaintiff's claims did not meet the conceivable effects test).  Further, applying the "close nexus" test confirms that Mezzanine Lender's claims do not meet the requirements for jurisdiction.

30.    To satisfy the "close nexus" test and invoke the Court's post-confirmation jurisdiction, a plaintiff must show that the claim has a close nexus to the plan.  *See In re Gen. Media, Inc.*, 335 B.R. at 73.  A close nexus exists where "the matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan."  *Id.* at 74 ("Broadly speaking, the proceeding must affect some aspect of the plan -- its meaning, its

18

implementation or its consummation -- to come within the Court's post-confirmation jurisdiction.").

31.     Here, the Adversary Proceeding will not require consulting or interpreting the Plan, and the Plan has no bearing on the Adversary Proceeding.  *See In re Gen Media, Inc.*, 335 B.R. at 74-75 (finding no close nexus where "[n]one of the claims ar[o]se under the Plan or require[d] the Court to interpret it"); *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 170 (3d Cir. 2004) (finding that "[r]esolution of this matter will not require a court to interpret or construe the Plan" because the issues in the litigation "will not be determined by reference to" the Plan).  Indeed, none of the issues in the Adversary Proceeding, which solely relate to the rights and obligations of the non-debtor parties under the ICA, turn on any facet of, or language in, the Plan whatsoever.  Moreover, if the Plan is confirmed, the resolution of the Adversary Proceeding will not affect the implementation or execution of the Plan.  As such, in the event that the Plan is confirmed, there is further reason to dismiss this Adversary Proceeding.

## II.     IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS DISCRETION TO ABSTAIN FROM HEARING THE ADVERSARY PROCEEDING

32.     Even if the Court were to find that it has subject matter jurisdiction over the Adversary Proceeding (which it should not), the Court should still exercise its discretion to abstain from hearing Mezzanine Lender's claims.

33.     Section 1334 expressly contemplates that bankruptcy courts may abstain from hearing a proceeding and gives such courts "broad discretion" to do so "whenever appropriate 'in the interest of justice or in the interest of comity with State courts or respect for State law.'"  *Cody, Inc. v. Orange Cty. (In re Cody, Inc.)*, 281 B.R. 182, 190 (S.D.N.Y. 2002) (quoting 28 U.S.C. § 1334(c)(1)).  The statute therefore "codifies the 'permissive abstention doctrine' and demonstrates the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid

19

limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case." *Id.*

34.     Courts have considered as many as twelve factors in determining whether to abstain under Section 1334(c)(1).  *See id.*[7]  No one factor is dispositive and courts are not required to consider or analyze all factors.  *In re Cody, Inc.*, 281 B.R. at 190-91; *see also Waleski v. Montgomery, McCraken, Walker & Rhoads, LLP (In re Tronox)*, 603 B.R. 712, 726 (Bankr. S.D.N.Y. 2019) ("The analysis is not a mechanical or mathematical exercise, and the court need not plod through a discussion of each factor in the laundry lists developed in prior decisions."). Many of the twelve factors weigh heavily in favor of abstention here.

35.     **The Effect or Lack Thereof on the Efficient Administration of the Estate if a Court Recommends Abstention.**  Courts have found this factor to favor abstention where "the lawsuit is entirely among non-debtors" and there is no "practical likelihood of a meaningful burden on the bankruptcy estate" if the case were to be heard in state court.  *In re George Wash. Bridge Bus Station Dev. Venture LLC*, No. 19-13196, 2022 WL 1714176, at *27 (Bankr. S.D.N.Y. May 25, 2022); *In re Motors Liquidation Co.*, 457 B.R. 276, 289-90 (Bankr. S.D.N.Y. 2011).  That is

---

[7]     "In determining whether to exercise permissive abstention under § 1334(c) courts have considered **one or more** (not necessarily all) of twelve factors:"

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*Cody, Inc.*, 281 B.R. at 190-91 (emphasis in original).

precisely the case here. TH Holdco and Mezzanine Lender are non-debtors and the resolution of Mezzanine Lender's state law claims regarding the parties respective rights under the ICA, to which no debtor is a party, will have no impact on the efficiency of the administration of the bankruptcy estate.

36.    **The Extent to Which State Law Issues Predominate Over Bankruptcy Issues.** "While no factor is determinative, abstention is particularly compelling where the proceeding sounds in state law and bears a limited connection to the debtor's bankruptcy case." *In re Baypoint Assocs.*, No. 05-1356, 2008 WL 822122, at *3 (E.D.N.Y. Mar. 19, 2008). State law issues plainly predominate here because Mezzanine Lender "brings only state law claims." *Tilton*, 620 B.R. at 717. Courts have recognized that "[i]n a case like this one that will turn on the meaning of the contracts and the course of dealings between the parties[,] . . . it cannot be said that either [federal district or bankruptcy courts] are in a better position to hear the action than the New York State Supreme Court." *Worldview Ent. Holdings Inc. v. Woodrow*, 611 B.R. 10, 19 (S.D.N.Y. 2019). Here, resolution of the Adversary Proceeding will turn on the interpretation of the ICA, whether Mezzaine Lender, Prior Senior Lender, and TH Holdco complied with their obligations thereunder, and whether Mezzanine Lender's conduct and equitable principles bar its claims. As such, the factor weighs in favor of Court abstaining from deciding Mezzanine Lender's claims.

37.    **The Jurisdictional Basis, if Any, Other Than 28 U.S.C. § 1334.** The only conceivable basis to support bankruptcy court jurisdiction over Mezzanine Lender's state law claims is 28 U.S.C. § 1334 as "there is no diversity of citizenship and no federal question raised . . . ." *Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*, No. 94 B 44488, 1999 WL 294995, at *3 (S.D.N.Y. May 11, 2019); *see also Taub v. Hershkowitz (In re Taub)*, 417 B.R. 186, 194 (Bankr. E.D.N.Y. 2009) ("Here there is no basis for federal jurisdiction

21

other than 28 U.S.C. § 1334.  Accordingly, this Court finds that this factor weighs in favor of abstention."); *Osuji v. HSBC Bank, U.S.A., N.A.*, 580 B.R. 605, 615 (E.D.N.Y. 2018) (similar).  As such, this factor, too, favors abstention.

38.    **The Degree of Relatedness or Remoteness of the Proceeding to the Main Bankruptcy Case.**  The mere fact that Borrowers are in bankruptcy does not render a dispute under the ICA between two lenders "related to" the Bankruptcy Proceedings.  *See supra* at 15. Rather, the dispute in the Adversary Proceeding is "sufficiently remote that the case can be heard in state court without meaningful impact on or necessary re-litigation and examination of bankruptcy-specific aspects of proceedings in" the bankruptcy court.  *In re George Wash. Bridge Bus Station*, 2022 WL 1714176, at *10.  As detailed above, there is no "related to" jurisdiction here because the Adversary Proceeding will not have a "conceivable effect" on the Bankruptcy Proceedings in light of the attenuated relationship between resolution of the Adversary Proceeding and any theoretically possible effect on the Bankruptcy Proceedings.  *See supra* at 16-18.  That conclusion is in accord with Judge Drain's determination that a resolution of the Adversary Proceeding is not a "gating item" for proceeding with confirmation.  Cooper Ex. 7 (Apr. 6 Hearing Tr.) at 16:12-13.  There is a significant degree of remoteness between the Adversary Proceeding and the Bankruptcy Proceedings and, thus, this factor further weighs in favor of abstention.

39.    **The Burden on the Court's Docket.**  As courts have found, "state law issues present in [a] case[ ] make[s] state court an appropriate forum, and makes the case[ ] an unnecessary addition to the federal court's docket where state courts are equipped and ready to hear" the state law issues presented.  *Osuji*, 580 B.R. at 616.  That is exactly the case here for the reasons previously described.  Moreover, because Mezzanine Lender waived certain of its rights under Section 9(d), Mezzanine Lender will be unable to prevail on its claim and therefore this

Court will not be able to afford Mezzanine Lender the relief that it seeks. *See supra* at 11-13. The Adversary Proceeding therefore poses an especially unnecessary burden on this Court's docket.

40.    **The Presence in the Proceeding of Non-Debtor Parties.**    Both parties to the Adversary Proceeding are non-debtors, and thus this factor weighs in favor of abstention. *See Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*, 241 B.R. 511, 521 (Bankr. S.D.N.Y. 1999).

41.    Given the foregoing factors, and the fact that, in a "garden variety state law contract dispute between non-debtors," the "countervailing considerations are slim," abstention is manifestly appropriate in this case. *In re Masterwear Corp.*, 241 B.R. at 521.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Adversary Proceeding for lack of jurisdiction pursuant to Federal Rule 12(b)(1), (c), and (h)(3), or, in the alternative, abstain pursuant to 28 U.S.C. § 1334(c)(1).

Dated:    New York, New York
        June 27, 2022

                                     FRIED, FRANK, HARRIS, SHRIVER
                                     & JACOBSON LLP

                            By:                                   
                                             Emilie B. Cooper

                                   Harrison D. Polans
                                   One New York Plaza
                                   New York, New York 10004-1980
                                   (212) 859-8000
                                   emilie.cooper@friedfrank.com
                                   harrison.polans@friedfrank.com

                                   *Attorneys for Defendant*
                                    *TH Holdco LLC*

30379621