| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
| ----------------------------------------------------------------x | |
| In re | Chapter 11 |
| 85 FLATBUSH RHO MEZZ LLC, *et al.* | Case No. 20-23280 (SHL) |
| Debtors. | (Jointly Administered) |
| ----------------------------------------------------------------x | |
| 85 FLATBUSH MEZZ LLC, | |
| Plaintiff, | |
| v. | Adv. No. 22-07022 (SHL) |
| TH HOLDCO LLC, *as assignee of 85 Flatbush Avenue I LLC in its capacity as the Debtors' prepetition mortgage lender to 85 Flatbush RHO Hotel and 85 Flatbush RHO Residential*, | |
| Defendant. | |
| ----------------------------------------------------------------x | |

## MEMORANDUM OF DECISION

**A P P E A R A N C E S :**

**LEECH TISHMAN ROBINSON BROG PLLC**
*Counsel to Debtors*
  By:  Arnold Mitchell Greene, Esq.
         Fred B. Ringel, Esq.
         Robert M. Sasloff, Esq.
         Lori A. Schwartz, Esq.
875 Third Avenue, 9th Floor
New York, New York 10022

**GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP**
*Counsel to Plaintiff*
  By:  J. Ted Donovan, Esq.
         Kevin J. Nash, Esq.
125 Park Avenue, 12th Floor
New York, New York 10017

**SEYFARTH SHAW LLP**
*Counsel to Plaintiff*
  By:  Michael Ryan Pinkston, Esq.

560 Mission Street, Suite 3100
San Francisco, CA 94105

**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
*Counsel to Defendant*
  By:   Emilie Cooper, Esq.
         Benjamin Stephen Owen Paull, Esq.
One New York Plaza
New York, New York 10004

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is TH Holdco LLC's *Motion to Dismiss Adversary Proceeding (Motion for Judgment on the Pleadings)* (the "Motion") [Adv. ECF No. 14][1] and the accompanying *Memorandum of Law in Support of Defendant TH Holdco LLC's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(b)(1), (c), & (h)(3)* ("TH Holdco's Mem. of Law") [Adv. ECF No. 15]. The case here involves an intercreditor dispute between two nondebtors that lent money to the debtors. The Motion seeks dismissal of the complaint filed by Plaintiff 85 Flatbush Mezz LLC. *See* Case No. 20-23280. In addition to the Motion, the Court also has before it the *Declaration of Emilie B. Cooper* submitted by the movant [Adv. ECF No. 16], the *Opposition* filed by the Plaintiff [Adv. ECF No. 24] and movant's *Reply* [Adv. ECF No. 26]. For the reasons explained below, the Court grants the motion.

## Background

      In assessing the Motion, the Court takes the allegations of the Complaint as true. [Adv. ECF No. 1]. In considering the Motion, the Court may consider not only the allegations of the Complaint, but also the documents that are attached or referenced in the Complaint. *See Life*

---

[1] All references to docket entries in adversary proceeding 22-07022 are cited as follows: "Adv. ECF No."

2

*Prod. Clearing, LLC v. Angel*, 530 F. Supp.2d 646, 652 (S.D.N.Y.2008). In addition, the Court may take judicial notice of the events of this case during the course of the bankruptcy. *Id*.

The Debtors in the underlying bankruptcy case are 85 Flatbush RHO Mezz LLC ("Mezz"), 85 Flatbush RHO Hotel LLC ("Hotel") and 85 Flatbush RHO Residential LLC ("Residential", and defined together with Mezz and Hotel, the "Debtors") (Case No. 20-23280). Debtor Mezz acquired a mixed-used property with a hotel component, known as the Tillary Hotel, and a residential component consisting of 64 units, located at 85 Flatbush in Brooklyn, New York (collectively, the "Property"). *See* TH Holdco's Mem. of Law, ¶ 4 [Adv. ECF No. 15]. To purchase the Property, Debtors Hotel and Residential took out a loan from 85 Flatbush Avenue 1 LLC ("Original Senior Lender"), in which the Original Senior Lender was granted a mortgage and security interest in the Property ("Senior Loan"), and Debtor Mezz took out a loan from 85 Flatbush Mezz LLC ("Mezz Lender"), secured by a pledge of its interests in Hotel and Residential ("Mezz Loan"). *See* Complaint, at ¶¶ 16-18 [Adv. ECF No. 1].

The Original Senior Lender and the Mezz Lender entered into an Intercreditor Agreement (the "ICA") to govern their relationship. *See id.*, at ¶ 21. Central to the parties' dispute are certain sections of the ICA, including: 1) Section 9 that addresses "Rights of Subrogation" and "Bankruptcy"; 2) Section 11 that outlines Mezz Lender's right to purchase the Senior Loan; and 3) Section 31 that covers injunctions.

The first of these three sections—Section 9(d)—broadly provides that, absent the Senior Lender's prior consent, the Mezz Lender shall not take certain actions, including:

- "make any election, give any consent, commence any action, [or] credit bid on all or any portion of the collateral for the Senior Loan";

- "file any motion, claim, obligation, notice or application";

3

> - "challenge (or join in another party's challenge to) the validity or amount of any claim submitted in such Proceeding by Senior Lender in good faith or any valuations of . . . any [ ] Senior Loan collateral submitted by Senior Lender in good faith";
>
> - "take any . . . action . . . which is adverse to Senior Lender's enforcement of its claim or receipt of adequate protection"; or
>
> - "take any other action . . . ."

ICA § 9(d)(i), (iii).

The second of these sections—Section 11—addresses the Mezz Lender's right to purchase the Senior Loan subject to certain conditions, and the related notice that the Senior Lender must give to Mezz Lender of such a window. It provides that:

> Upon the occurrence of a Purchase Option Event, Senior Lender shall provide prompt written notice thereof to Mezzanine Lender (a "Purchase Option Notice"), and Mezzanine Lender shall have the right to elect to purchase, in whole but not in part, the Senior Loan for the Loan Purchase Price, payable in immediately available funds, by delivering to Senior Lender written notice of Mezzanine Lender's intention to purchase the Senior Loan (the "Purchase Notice"), together with a deposit in an amount equal to ten percent (10%) of the Loan Purchase Price (as may be increased in accordance with Section 11(c), the "Purchase Deposit"), provided that such right may only be exercised, and such purchase may only be consummated, if (x) no Mezzanine Lender Intercreditor Event of Default exists at the time of such exercise or at the time such purchase is to be consummated, and (y) the Purchase Notice is sent within thirty (30) days after Mezzanine Lender's receipt of the Purchase Option Notice (the "Notice Period").

ICA § 11(a). That same section also provides that failure to provide the contemplated Purchase Notice to the Mezz Lender shall only have certain circumscribed consequences. It states:

> The failure of Senior Lender to provide a Purchase Notice to Mezzanine Lender regarding the occurrence of a Purchase Option Event shall have no adverse effect on Senior Lender other than the resulting extension of the time in which the Purchase Notice may be given.

*Id*.

The final provision relevant to the parties' dispute is Section 31, which sets forth the circumstances and extent to which injunctions are permitted to enforce the parties' rights under the ICA. It provides in relevant part:

4

> Senior Lender, on the one hand, and Mezzanine Lender, on the other hand, each acknowledge (and waive any defense based on a claim) that monetary damages are not an adequate remedy to redress a breach by the other party hereunder and that a breach by Senior Lender or Mezzanine Lender hereunder would cause irreparable harm to the other party hereunder.  Accordingly, Senior Lender and Mezzanine Lender agree that upon a breach of this Agreement by Senior Lender, on the one hand, or Mezzanine Lender, on the other hand, the remedies of injunction, declaratory judgment and specific performance shall be available to such non-breaching party.  Notwithstanding the foregoing, if Senior Lender shall exercise any right or remedy under the Senior Loan Documents that is not in violation of this Agreement, including without limitation, any Enforcement Action, Mezzanine Lender agrees not to object to, oppose, hinder, contest, interfere with or seek to enjoin or restrain any such action (whether through remedies of injunction, declaratory judgment or specific performance, the filing of a lis pendens, or otherwise) in violation of this Agreement, all of which remedies are hereby waived.

ICA § 31.

Against the backdrop of these ICA provisions, the Debtors defaulted on their Senior Loan payments.  *See* Complaint, at ¶ 30 [Adv. ECF No. 1].  TH Holdco subsequently purchased the Senior Loan from the Original Senior Lender and took the Senior Loan subject to the terms of the ICA.  *See* Complaint, at ¶ 10 [Adv. ECF No. 1].

In this adversary proceeding, the Mezz Lender complains that Original Senior Lender breached the ICA on numerous occasions by failing to provide Mezz Lender with a "Purchase Option Notice" upon the occurrence of several events of default, thus violating the express terms of Section 11(a) of the ICA that required the Original Senior Lender to provide such notice.  *See* Complaint, at ¶¶ 3, 6, 10 [Adv. ECF No. 1].  For this alleged breach, the Mezz Lender seeks injunctive relief under Section 31 of the ICA.  *See id.*, at ¶ 44.

The Mezz Lender's allegations about breach of the ICA have been the subject of much discussion during the course of the main bankruptcy case.  After the Original Senior Lender sold the Senior Loan to TH Holdco in January 2022, TH Holdco filed its own chapter 11 plan and disclosure statement seeking to acquire the Property by a credit bid of its recently acquired secured claim.  TH Holdco's Chapter 11 Plan [ECF No. 151]; TH Holdco's Disclosure Statement

5

[ECF No. 152]. Mezz Lender subsequently filed this adversary proceeding, arguing not only that the Original Senior Lender had breached the ICA by failing to provide the Purchase Option Notices but also that the Mezz Lender was entitled to purchase the Property on terms that would have been available to it when the Purchase Option Notices should have been provided. *See* Complaint [Adv. ECF No. 1].

In several hearings leading up to confirmation, Judge Drain—who was presiding over the case at that time—discussed the adversary proceeding. At one hearing, he stated that "the merits of [Mezz Lender's] claim" is "an open issue, and it could be decided either here or in a state court, depending on this Court's jurisdiction." Cooper Ex. 7 (Hr'g Tr. 9:14-16 (April 6, 2022)). At a subsequent hearing on May 16, 2022, Judge Drain noted that the adversary proceeding is "between two non-debtors, to enforce an agreement that I don't think the Debtor is a party to," and stated that "I have a hard time seeing [jurisdiction] here [ ] given the restrictions . . . in the inter-creditor agreement that are imposed on the Mezzanine Lenders." Cooper Ex. 2 (Hr'g Tr. 39:6-8, 39:14-16 (May 16, 2022); *see also id*., at 35:4-10 ("I'm not prepared to say that confirmation will be delayed until there's a determination in the adversary proceeding.")).

TH Holdco's chapter 11 plan was confirmed on June 30, 2022. *See* Confirmation Order [ECF No. 280]. In confirming the plan, this Court rejected the objections of the Mezz Lender and the Debtors. More specifically, Judge Drain overruled the Mezz Lender's objection to TH Holdco voting Mezz Lender's claim and accepting the plan on their behalf. Hr'g Tr. 36:15-22 (June 30, 2022). In so ruling, Judge Drain found not only that the ICA was binding on the Mezz Lender and Section 9(d)[2] enforceable, but also that the Mezz Lender had actually *agreed* to

---

[2] Section 9(d)(ii) states that "[i]f Mezzanine Lender is deemed to be a creditor of Borrower, Guarantor or any Loan Party in any Proceeding, . . . (ii) Senior Lender may vote in any such Proceeding any and all claims of Mezzanine Lender, and Mezzanine Lender hereby appoints Senior Lender as its agent, and grants to Senior Lender an irrevocable power of attorney coupled with an interest, and its proxy, for the purpose of exercising any and all

6

provide power of attorney to the Senior Lender for the right to vote its claim in a bankruptcy plan. *Id.*, at 37:7-15. Debtors' objections were aimed at obtaining an adjournment of confirmation on the basis that the adversary proceeding was a gating issue and Debtors' belief that their chapter 11 plan should be considered by the Court in tandem with the plan proposed by TH Holdco. *Id.*, at 56:2-24, 57:11-14, 60:8-22. But the Court did not see the adversary proceeding as a gating issue, holding that TH Holdco, as secured creditor, could credit bid the full amount of their claim including post-petition interest. *Id.*, at 77:1-18. In overruling the remainder of Debtors' objections, the Court concluded that there were "material deficiencies in the Debtors' proposed second amended plan" making it unconfirmable and that adjournment of confirmation to allow Debtors' proposed plan to run on a parallel track to TH Holdco's was unwarranted. *Id.*, at 78:10-79:10; 85:15-23. The confirmation order was appealed by Mezz Lender and the Debtors. (No. 22-CV-6233 ECF No. 1; No. 22-CV-6241 ECF No. 1).

A few days prior to confirmation, TH Holdco filed the present Motion [Adv. ECF Nos. 14, 15] and briefing was completed during the pendency of the appeal of the Confirmation Order. In seeking dismissal, the Motion argues that the Court lacks related-to jurisdiction over this dispute, that the ICA expressly prohibits the Mezz Lender from commencing this adversary proceeding, and that, in the alternative, the Court should abstain from hearing the adversary proceeding. *See* TH Holdco's Motion for Judgment on the Pleadings [Adv. ECF No. 14]. In its Opposition, the Mezz Lender counters that Section 31 provides a basis for relief for the alleged breach of the ICA, that jurisdiction existed at the time the Adversary Complaint was filed and that abstention is inappropriate given the impact of the adversary proceeding on the underlying bankruptcy case. *See* Debtors' Opposition [Adv. ECF No. 24]. The Court heard oral arguments

---

rights and taking any and all actions available to Mezzanine Lender in connection with any case by or against borrower or any Guarantor in any Proceeding . . ." ICA § 9(d).

on August 11, 2022, but advised the parties that the Court did not consider the matter ripe for decision given the overlapping issues between this adversary proceeding and the then-pending appeal of the Confirmation Order. *See* Hr'g Tr. 51:2-18 (August 11, 2022) [Adv. ECF No. 30].

On late October 2022, the District Court affirmed the Confirmation Order. *See* District Court Opinion and Order [ECF No. 328]. In its affirmance, the District Court assessed the interplay of Sections 9, 11 and 31 of the ICA, and the feasibility of Debtors' proposed plan to determine whether this Court erred in entering the Confirmation Order. *See id.* Without ruling on the merits of the adversary proceeding, the District Court found that Mezz Lender waived certain rights under Section 9(d) and that Mezz Lender failed to show that TH Holdco breached the ICA in a way sufficient to entitle Mezz Lender relief under Section 31. *Id.*; *see* ICA §§ 9(d), 31. Similarly, the District Court found much of Debtors' arguments on appeal meritless. *See In re 85 Flatbush RHO Mezz LLC*, 2022 WL 11820407, at *7, 12-15 (S.D.N.Y. Oct. 20, 2022) (concluding that Debtors failed to show how TH Holdco's plan was not proposed in good faith and how TH Holdco was not a good faith purchaser for the Property). Further, the District Court agreed that Debtors failed to show how their own proposed plan was confirmable under 1129(a) and (b). *Id.*, at *16-17; *see* 11 U.S.C. §§ 1129(a)-(b).

After holding a status conference with the parties in January 2023, the Court took the Motion under advisement. *See* TH Holdco's Letter Regarding Defendant's Motion for Judgment on the Pleadings [Adv. ECF No. 31].

## Discussion

I.  **The Applicable Legal Standards Under Rule 12 of the Federal Rules of Civil Procedure**

Standing to maintain an adversary proceeding presents a question of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, which is made

8

applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure. *In re Magnesium Corp. of Am.*, 583 B.R. 637, 646 (Bankr. S.D.N.Y. 2018) (citing *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87–88 (2d Cir. 2006)). Article III standing is a prerequisite for jurisdiction. *See, e.g., Fulani v. Bentsen*, 35 F.3d 49, 51 (2d Cir. 1994); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Questions of subject matter jurisdiction are threshold issues that must be examined by the Court before any other issue is resolved. S*ee, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). In the absence of such jurisdiction, federal courts lack the power to adjudicate the merits of the case. *Id.*, at 94; *see Liranzo v. United States*, 690 F.3d 78, 83 (2d Cir. 2012).

Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see Liranzo v. United States*, 690 F.3d at 83. Subject matter jurisdiction may not be waived and can be raised at any time prior to final judgment. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004). In examining the different kinds of bankruptcy court jurisdiction, the Second Circuit Court of Appeals has observed:

> Bankruptcy courts may exercise jurisdiction, through referral from the district court, over three broad categories of proceedings: those 'arising under title 11' of the Code, those 'arising in . . . a case under title 11,' and those 'related to a case under title 11.' 28 U.S.C. § 157(a). Proceedings 'arising under title 11, or arising in a case under title 11,' are deemed 'core proceedings.' *Stern v. Marshall*, 564 U.S. 462, 476 (2011) (quoting 28 U.S.C. § 157(b)). In those proceedings, bankruptcy courts retain comprehensive power to resolve claims and enter orders or judgments. *See In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 96 (2d Cir. 2005).

*Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 153 (2d Cir. 2016). "Related to" jurisdiction exists if the action's "outcome might have any conceivable effect on the bankrupt estate." *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) ("[A] civil proceeding is related to a title 11 case if the action's outcome might have *any*

9

*conceivable effect* on the bankrupt estate.") (emphasis added) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992)). "Conceivable effects" typically manifest themselves by altering "[t]he amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors . . . ." *McMillan v. Barclays Bank PLC*, 2014 WL 4364053, at *3 (S.D.N.Y. Sept. 3, 2014) (quoting *In re Kolinsky*, 100 B.R. 695, 702 (S.D.N.Y. 1989). However, "related to" jurisdiction is not limitless. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995). To come within the scope of "related to" jurisdiction the litigation must have a "significant connection" with the bankruptcy. *In re 19 Court St. Assocs., LLC*, 190 B.R. 983, 996 (Bankr. S.D.N.Y. 1996) (citing *In re Turner*, 724 F.2d 338, 340-41 (2d Cir. 1983)). If too many links exist in the chain of causation before the bankruptcy estate is affected, there may be cause for a court to preclude "related to" jurisdiction. *See McMillan*, 2014 WL 4364053, at *3 (citing *Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 2011 WL 4965150, at *3 (S.D.N.Y. Oct. 19, 2011)). Once a plan has been confirmed, a bankruptcy court still has "related to" jurisdiction if there is a "close nexus . . . between the current action and the original bankruptcy proceeding." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1191 (9th Cir. 2005). "[A] close nexus exists between a post-confirmation matter and a closed bankruptcy proceeding sufficient to support jurisdiction when the matter 'affect[s] the interpretation, implementation, consummation, execution, or administration of the confirmed plan.'" *Id.* at 1194.

The other basis for dismissal invoked by the Movant is Rule 12(c) of the Federal Rules of Civil Procedure, which is made applicable to this adversary proceeding by Bankruptcy Rule 7012. That Rule states: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits

10

is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). In deciding a Rule 12(c) motion for judgment on the pleadings, courts apply the same standard applicable to a motion under Rule 12(b)(6). *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010); *Lewis v. GMAC Mortgage Co., LLC (In re Residential Capital, LLC),* 2012 WL 5386151, at *3 (Bankr. S.D.N.Y. Nov. 1, 2012). To survive such a motion to dismiss, a plaintiff must "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). When considering a motion to dismiss under either Rule 12(b)(6) or Rule 12(c), a court must accept the facts alleged in the Complaint as true and draw all reasonable inferences in favor of the non-moving party. *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999). However, where "a plaintiff's conclusory allegations are clearly contradicted by documentary evidence incorporated into the pleadings by reference . . . the court is not required to accept them." *In re Musicland Holding Corp.*, 374 B.R. 113, 119-20 (Bankr. S.D.N.Y. 2007). A court may look beyond the four corners of the complaint and consider the exhibits, statements and documents that are incorporated by reference, and issues upon which the Court can take judicial notice. *Life Prod. Clearing, LLC v. Angel*, 530 F. Supp.2d at 652. In rendering its decision, courts should consider "the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

    **II.**    **Subject Matter Jurisdiction Here**

    The parties focus their arguments on whether the outcome of this adversary proceeding will have a "conceivable effect" on the bankruptcy estate and, therefore, grant this Court "related to" jurisdiction. TH Holdco asserts that this adversary proceeding is not "core" because it does not assert rights created by the Bankruptcy Code. Further, they argue that any effect this

adversary proceeding may have on the bankruptcy estate will be too remote or speculative to support "related to" jurisdiction. At the time of filing, Mezz Lender's arguments largely relied on this adversary proceeding being a gating issue for confirmation. However, Judge Drain did not view it as such and proceeded with confirmation of TH Holdco's Plan. In affirming the confirmation of the plan, Judge Seibel reached a similar conclusion:

> [t]he remedy available for Original Lender's alleged breach is an extension of time for TH Holdco to provide the Purchase Notice. [ ] And even if other remedies are available, the provision makes clear that the Original Lender's breach "shall have no adverse effect" on TH Holdco. Mezz Lender argues that its requested relief – the exercise of the purchase option and payment by Mezz Lender for the Senior Loan – would not constitute an "adverse effect." (Mezz Lender Mem. at 14.) But TH Holdco points out that it would be adversely affected by the granting of Mezz Lender's requested specific performance because it would prevent TH Holdco from enforcing Section 9(d), would interfere with confirmation of the TH Holdco Plan, and would require TH Holdco to sell the Senior Loan valued as of July 2020 rather than "the date the Mezzanine Lender purchases the Senior Loan in accordance with Section 11." (TH Holdco Opp. to Mezz Lender at 25 & n.5.) The language of Section 11, at least, suggests that Mezz Lender may not be entitled to its requested relief because it would "adverse[ly] affect" TH Holdco.

*In re 85 Flatbush RHO Mezz LLC*, 2022 WL 11820407, at *8.[3]

The Mezz Lender points to the Original Senior Lender's failure to provide a Purchase Option Notice under Section 11(a), arguing that a ruling here will—at a minimum—impact "the priority and distributions among creditors, whether TH Holdco is a creditor of the Debtors and able to credit bid at a sale of the Debtors' real property, and the propriety and confirmability of TH Holdco's liquidation plan." *See* Opposition, at 7 [Adv. ECF No. 24]. But most of the conceivable effects identified by the Mezz Lender in its Opposition have since become moot. *See In re 85 Flatbush RHO Mezz LLC,* 2022 WL 11820407, at *10-11 (affirming the

---

[3] Even if this Court were to find in favor of Mezz Lender in this adversary proceeding, the remedy in Section 11(a) is an "extension of time in which the Purchase Notice may be given [ ]" which would only be the first of many steps before there is an effect on the bankruptcy estate. As the Section 11(a) remedy would be "mere precursor" to any potential ramifications on the underlying bankruptcy proceeding, it would be an insufficient basis for "related to" jurisdiction. *See McMillan*, 2014 WL 4364053, at *3.

Confirmation Order which moots Mezz Lender's original concerns revolving around the proposed chapter 11 plans and TH Holdco's ability to credit bid); *see also* Order Resolving TH Holdco LLC's Motion To Enforce Debtors' Obligation To Cooperate With Closing Of Credit Bid [ECF No. 336] (setting close of the credit bid on November 9, 2022). As it stands, TH Holdco's chapter 11 plan has been confirmed in the underlying bankruptcy case—and affirmed by the District Court—and TH Holdco's credit bid transaction contemplated by the Plan has closed with the turnover of the Property on November 9, 2022. *See* Order Resolving TH Holdco's Motion to Enforce Closing [ECF No. 336]. Given the current posture of the bankruptcy case and the operative language of the ICA, the Mezz Lender's appropriate recourse would be in a direct suit against TH Holdco for any alleged breach of the ICA—a lawsuit brought by a nondebtor against a nondebtor. *See* Hr'g Tr. 36:2-6 (May 16, 2022) (Judge Drain noting that the parties' claims "may be actually properly raised in State Court instead of in Federal Court. Because it doesn't really affect the auction or the confirmation hearing, it's just a monetary claim between two non-debtors.").[4]

### III.   Judgment on the Pleadings

Even if the Court found subject matter jurisdiction here, dismissal of the adversary proceeding would nonetheless be appropriate.

---

[4]   As explained more fully by Judge Drain at that hearing:

> This is a lawsuit between two non-debtors, to enforce an agreement that I don't think the Debtor is a party to. At least as to these provisions. And the case law, most of which comes out of the Southern District Bankruptcy Courts, on those types of disputes and how they relate to the Bankruptcy Court's jurisdiction, focus on whether the resolution of the lawsuit is necessary for some bankruptcy purpose. And sometimes it is and sometimes it isn't. As I've said, I have a hard time seeing it here, given the restrictions on what, in the inter-creditor agreement that are imposed on the Mezz lenders. So I think you all ought to look at that case law and see whether this is actually properly in State Court.

*See* Hr'g Tr. 39:9-18 (May 16, 2022).

13

As TH Holdco argues, the Court need not look beyond Section 9(d) of the ICA to dismiss this case.  As discussed above, Section 9(d)—also referred to as the "no-action clause"—bars the Mezz Lender from commencing this type of action and, therefore, waives the Mezz Lender's right to commence this adversary proceeding.  *See* TH Holdco's Motion, at ¶¶ 16-21 [Adv. ECF No. 15].  Mezz Lender suggests Section 9(d) does not bar this action when read in harmony with Section 31.  More specifically, Mezz Lender contends that Section 9(d) "handcuffs" the Mezz Lender's ability to take certain actions in a bankruptcy case *except* where Mezz Lender is acting to preserve its collateral.  *See* Hr'g Tr. 25:1-21 (August 11, 2022).  Thus, Mezz Lender reads Section 31 to provide it with relief "in an effort to preserve its collateral" based on the alleged breach of the ICA by the Original Senior Lender.  *See* Opposition, at 5-6 [Adv. ECF No. 24]; Hr'g Tr. 21:25-23:11 (August 11, 2022).  Relying on Section 31, Mezz Lender asserts that Original Senior Lender materially breached the ICA by not providing Mezz Lender with Purchase Option Notices at certain required times, in violation of Section 11(a).

But the Court is not persuaded by Mezz Lender's interpretation because it ignores the rest of the ICA.  As discussed above, the Court is guided by the interpretation of the ICA by Judge Seibel and Judge Drain, both of which concluded that the Mezz Lender was prevented from interfering with the Senior Lender's exercise of its rights.  *See In re 85 Flatbush RHO Mezz LLC*, 2022 WL 11820407, at *8-9 (Judge Seibel finding that Section 9(d) prohibits Mezz Lender from seeking enforcement of its rights under Sections 11 and 31 in a bankruptcy forum); Hr'g Tr., 37:7-15 (June 30, 2022) (Judge Drain finding that the agreement in Section 9(d) is binding for purposes of confirmation).  The conclusions of Judge Seibel and Judge Drain are consistent with the principles of contract interpretation, where the Court's "primary objective is to give effect to the parties' intent as revealed in the language that they used."  *Musicland*, 374 B.R., at 113.

"The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Matter of Pooling and Serv. Agmts.*, 2018 WL 1229702, at *6 (S.D.N.Y. Mar. 9, 2018). Like Judges Seibel and Drain, this Court is mindful of the plain language in Section 9(d)(i) of the ICA, which provides that the Mezz Lender cannot stand in the way of the efforts of the Senior Lender by commencing a proceeding. The section states:

> If Mezzanine Lender is deemed to be a creditor of Borrower, Guarantor or any Loan Party in any Proceeding, (i) Mezzanine Lender hereby agrees that it shall not make any election, give any consent, commence any action, credit bid on all or any portion of the collateral for the Senior Loan or file any motion, claim, obligation, notice or application or take any other action in any Proceeding by or against Borrower or Guarantor without the prior written consent of Senior Lender, except to the extent necessary to preserve or realize upon Mezzanine Lender's interest in the Equity Collateral[.]

ICA § 9(d)(i). "Proceeding" is defined in the ICA as "any case, proceeding or other action [ ] relating to bankruptcy, insolvency, reorganization, conservatorship, arrangement, adjustment, or other relief with respect to debts or debtors." *See* ICA § 1(a). It is undisputed that TH Holdco, as assignee of the Original Senior Lender, is considered the "Senior Lender" for purposes of interpreting the Intercreditor Agreement, which was originally entered into by Original Senior Lender and Mezz Lender. Giving effect to the plain language of Section 9(d), Mezz Lender is barred by the ICA from initiating this Proceeding against TH Holdco as the Senior Lender, without the Senior Lender's consent.[5]

---

[5] Section 31 also specifically provides for the Senior Lender to exercise "any right or remedy under the Senior Loan Documents that is not in violation of [the ICA]" and places restrictions on Mezz Lender to not "object to, oppose, hinder, contest, interfere with or seek to enjoin or restrain any such action (whether through remedies of injunction, declaratory judgment or specific performance . . .) in violation of [the ICA], all of which remedies are hereby waived." ICA § 31.

15

Still, Mezz Lender argues that Section 9(d)(i) must be understood as a "proviso" to Mezz Lender's ability to seek relief under Section 31 if Mezz Lender's collateral is "being wiped out by [TH Holdco's] actions". Hr'g Tr. 37:16-17 (August 11, 2022). Mezz Lender's argument remains fixated on the Original Senior Lender's alleged violation of the ICA in not providing a Purchase Option Notice. However, Section 11 clearly outlines the remedy available to Mezz Lender for a breach of the Purchase Option Notice provision: an "extension of time in which the Purchase Notice may be given." *See* ICA § 11. That same provision goes on to make clear that failure to provide the Purchase Notice to Mezz Lender "shall have no adverse effect on Senior Lender". *Id*. Thus, Section 11 is explicit in providing only one remedy to Mezz Lender for any violation of the Purchase Option Notice—more time—and that any other possible remedy cannot adversely affect TH Holdco as the Senior Lender. *See id*; *In re 85 Flatbush RHO Mezz LLC*, 2022 WL 11820407, at *8 (TH Holdco noting the three ways it would be adversely affected by the granting of Mezz Lender's requested specific performance: it would prevent TH Holdco from enforcing Section 9(d), would interfere with confirmation of the TH Holdco Plan, and would require TH Holdco to sell the Senior Loan valued at an earlier date of July 2020).[6]

Indeed, the Mezz Lender's line of reasoning here would effectively undo the no action clauses typically found in intercreditor agreements by providing an out whenever a junior creditor disagreed with the course of action chosen by the senior lender as to the property that serves as collateral to the loans. Such an outcome would be squarely at odds with the purpose of intercreditor agreements. *See, e.g., Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund, Ltd. (In re Ion Media Networks, Inc.)*, 419 B.R. 585, 595 (Bankr. S.D.N.Y. 2009)

---

[6] These adverse effects were those identified during the Mezz Lender's appeal of confirmation of the Plan. But even in the aftermath of Mezz Lender's unsuccessful appeal, TH Holdco will suffer the adverse effect of the time and cost of defending against this lawsuit.

(giving effect to the plain language of an Intercreditor Agreement leads to more predictable and efficient commercial outcomes and minimizes the potential for wasteful and vexatious litigation).[7]

## Conclusion

In sum and for the foregoing reasons, TH Holdco's Motion to Dismiss is granted. The Defendant should settle an order on five days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Files docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon counsel to the Plaintiff.

Dated: White Plains, New York
      August 18, 2023

                                              */s/ Sean H. Lane*
                                              UNITED STATES BANKRUPTCY JUDGE

---

[7] Given this Court's conclusion that dismissal is appropriate, the Court does not need to address TH Holdco's argument for abstention as alternative relief.